Labauye, J.
This is a contest among the plaintiffs as holders respectively of certain notes executed by the defendants, and alleged to he secured by a mortgage on certain property of the defendants, and in regard to the preference or rank, of mortgage.
The District Court, having decided that the plaintiffs were all concurrent mortgage creditors, and that their claims, which were liquidated by judgments, should be paid out of the proceeds of the mortgaged property in the proportions they respectively bear to the whole; the plaintiffs in the first cases, Nos. 173 and 180, took an appeal to this Court.
Philip B. and Maria L. Key, by two acts of mortgages, one passed before Joseph Pardo, June the 25th, 1859, and the other, before Adolphe Grass, on the 15th June, I860, mortgaged their plantation to Edward Durrive & Go., in the one act, to the extent of $12,000, and in the other, to the extent of $20,000, for the following consideration, to-wit:
“Whereas Edward Durrive & Co., of the city of New Orleans, have agreed to make advances in cash for the use and benefit of Philip B. and Maria L. Key, from time to time, as they may require the same, upon the drafts of the said Philip B. Key, drawn in his own name and that of his mother, Mrs. Maria L. Key, on the said Edward Durrive & Co., with the understanding that the total amount of their indebtedness to the said firm shall never exceed at any one time the sum of twenty thousand dollars, (as expressed in one act, and twelve thousand dollars as expressed in the other,) to be evidenced by the account current of such advances, to be kept by the said firm, and all which advances are to bear interest at the rate of eight per cent, per annum, until reimbursed by the said Philip B. and Maria L. Key, and in order to secure the said Edward Durrive & Co. the full reimbursement of all such advances and interest and attorney’s fees, the said Philip B. and Mariá L. Key do specially mortgage and hypothecate, etc. ”
Here Mows the description of (¡he property mortgaged,
*155 Upon these securities it appears from a current account between the parties to these acts, and introduced in evidence', commencing on the31kt May, 1861, and closed on the 3íst August, 1862, that the defendants executed a large number of notes to their own order, and by them endorsed, which were delivered to Edward Durrive & Co., who also endorsed and negotiated them, and the net proceeds were credited in the current account to said defendants; that they also sent to market sugar and molasses which were sold by said Edward Durrive & Co., and put to the credit of said defendants; and Edward Durrive & Co. also received for defendents, proceeds of property at Carrollton, $5000, which was placed to the credit of defendents, amounting in all to...............$43,531 76 That the debit side of the account consisting in notes, drafts, money, supplies, &e., amounting to.....................$84,152 90
Left a balance due E. Durrive & Co. of......................$40,621 14
On the 31st August, 1862, the said E. Durrive & Co., retained fourteen notes of the defendants and which figured on the debit side, and credited them with the same, amounting to,. $34,850 00
Leaving still due a balance of....................$5,771 14
So, that on that day, the defendants o-wed really to E. Durrive & Co., in cash and their fourteen notes, the above balance of $40,621 14.
The notes sued upon, amounting to $20,550, being a part of the fourteen above mentioned, are also charged to debit of said defendants, and comprised in the said sum of $84,152 90. They were negotiated and transferred respectively to the plaintiffs by said Edward Durrive & Co., with a subrogation to their mortgage.
The question is: Are the notes sued upon, secured by the mortgage given by defendants to Edward Durrive & Co. ?
It is clear that this mortgage was not granted to secure any distinct and separate advances, drafts or any thing else charged on the debit side of the account current between the parties, but to guarantee the balance which might be due the mortgagees. The total amount of defendants’ indebtedness to Durrive & Co. was not to exceed at any one time the sum of $32,000, to be evidenced by the account current of such advances; this shows that the indebtedness of the mortgagors, should result from the balancing of the account, and that it is only then that it would be known. The account in evidence commences on the debit side, by charging the defendants with a balance of $1,620 73, showing that another and former account had already been balanced, and this balance is merged into a new account current. These notes are not more secured by the mortgage than any other item charged to the debit, amounting altogether to $84,152 90, when said mortgage only secured $32,000. Mortgages are stricti juris; they cannot be extended by implication to secure any other obligation than that expressly mentioned. 11 An. 175. This mortgage necessarily contemplated that the balance found due by the defendants, was secured by it, and not each and every item of the account. 7 An. 298.
We conclude that Edward Durrive & Co., had no mortgage to secure *156 separately the notes sued upon, and could transfer none to the transferrees and holders of said notes.
It is therefore ordered and decreed that the judgment appealed from be so amended as to strike out that part recognizing and allowing a mortgage, and that, as amended, it be affirmed; the appellants to pay costs of appeal.